UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

AMERICAN ALTERNATIVE INSURANCE
CORPORATION,

       Plaintiff,

v.

KOPELOWITZ OSTROW P.A., DALE
LEDBETTER, and JAN ATLAS,

       Defendants, and

1 GLOBAL CAPITAL LLC, 1 WEST
CAPITAL LLC, CARL RUDERMAN, AND
SARAH FOSTER, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

       Nominal Defendants.

CASE NO. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff AMERICAN ALTERNATIVE INSURANCE CORPORATION ("AAIC"), by

and through its undersigned counsel, hereby sues Defendants, KOPELOWITZ OSTROW P.A.

("KO"), DALE LEDBETTER ("Ledbetter"), JAN ATLAS ("Atlas"), and Nominal Defendants, 1

WEST CAPITAL LLC ("1 West"), 1 GLOBAL CAPITAL LLC ("1 GLOBAL"), CARL

RUDERMAN ("Ruderman"), and SARAH FOSTER, INDIVIDUALLY AND ON BEHALF OF

ALL OTHERS SIMILARLY SITUATED ("Foster"), for declaratory relief and states:

## JURISDICTION AND VENUE

1.     This is an action for declaratory relief pursuant to 28 U.S.C. Section 2201.

2.       This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) based upon the diversity of the citizenship and the parties and provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

3.       The amount in controversy includes the disputed liability limits of $2 million per claim and $4 million in the aggregate in liability insurance coverage under each of two policies of professional liability insurance.  Thus, the amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000, exclusive of interest, costs and attorney's fees.

4.       Venue is appropriate in the Southern District of Florida because some of the acts underlying this Complaint occurred in this district, as well as the fact that the underlying action for damages, from which this suit arises, is pending in Miami-Dade County, Florida. Moreover, as alleged below, several of the Defendants are residents of Miami-Dade County, Florida.

5.       All conditions precedent to the filing of this action have occurred or have been complied with.

## PARTIES

6.       At all times material to this action, Plaintiff AAIC is and was a Delaware corporation with its principal place of business in New Jersey. AAIC issued two Lawyers Professional Liability Insurance policies to the Named Insured, Kopelowitz Ostrow P.A. (defendant "KO" herein), one for the period of December 1, 2017 to December 1, 2018 (Policy No. 5LA2PL000149-03) (the "First AAIC Policy") (attached as *Exhibit A* hereto), and the other for the period of December 1, 2018 to December 1, 2019 (Policy No. 5LA2PL000149-04) (the "Second AAIC Policy") (attached as *Exhibit B* hereto) (collectively the "AAIC Policies").

303759169v1 1020052

7.      At all times material to this action, Defendant KO is and was a Florida Professional Association with its principal place of business in Miami-Dade County, Florida. KO is a law firm and it is the Named Insured under both AAIC Policies.

8.      At all times material to this action, Defendant Ledbetter is and was a resident and citizen of Florida.  Ledbetter was an attorney employed or associated with KO.  He claims rights as an insured under one or more of the AAIC Policies.

9.      At all times material to this action, Defendant Atlas is and was a resident and citizen of Florida.  Atlas was an attorney employed or associated with KO.  He claims rights as an insured under one or more of the AAIC Policies.

10.      At all times material to this action, Defendants 1 West and 1 Global are and were Florida Limited Liability Companies with their principal places of business in Hallandale Beach, Florida. As detailed below, 1 West and/or 1 Global allege that KO, Ledbetter and/or Atlas are liable for certain acts committed during the course of KO's legal representation of 1 West and/or 1 Global.  1 West and 1 Global are also defendants in a lawsuit filed by the Securities and Exchange Commission, as detailed below.

11.      At all times material to this action, Defendant Ruderman is and was a resident and citizen of the State of Florida, residing in Miami-Dade County.  Ruderman was the CEO of Defendants 1 West and/or 1 Global.  As detailed below, he has also asserted claims against KO, Ledbetter and/or Atlas in connection with their legal representation of, and/or other activities on behalf of, Defendants 1 West and/or 1 Global.  Ruderman is also a defendant in a lawsuit filed by the Securities and Exchange Commission, as detailed below.

12.      Defendant Foster is a resident and citizen of the State of Arizona.  As detailed below, Foster filed a putative class action complaint alleging, *inter alia*, that KO and Ledbetter

303759169v1 1020052

acted in concert with Ruderman in the sale of unregistered securities to Ms. Foster and the putative plaintiff class.

13.     1 Gobal, 1 West, Ruderman and Foster ("Nominal Defendants") have asserted liability claims against one or more of AAIC's insureds that are Defendants in this action (KO, Ledbetter and/or Atlas).   As such, Nominal Defendants' rights may be affected by the adjudication of this action to determine the existence or scope of insurance coverage for Nominal Defendants' liability claims.   Accordingly, Nominal Defendants are proper parties to this action and should be bound by the adjudication thereof.   *Capitol Specialty Ins. Corp. v. R.G. Rancho Grande Corp.*, 2010 U.S. Dist. Lexis 37711, 2010 WL 1541187 (S.D. Fla. 2010), citing *Fla Dep't of Educ. V. Glasser*, 622 So. 2d 944, 948 (Fla. 1993).

## FACTUAL ALLEGATIONS

14.     **Overview:**   As detailed below, various related claims and lawsuits have been asserted against 1 Global, Ruderman, Ledbetter, Atlas and KO.   Read together, these claims and suits allege a single, ongoing scheme to sell unregistered securities offered by 1 Global, and to funnel the proceeds from these illegal sales to an entity known as Bright Smile Financing, LLC, which in turn was owned by various trusts controlled by Ruderman for the benefit of his family members.

15.     **1 Global's Business:**   1 Global was in the business of offering short-term financing to small and medium size businesses.   As alleged in a Complaint filed by the Securities and Exchange Commission (***Exhibit C*** hereto), between at least February 2014 and July 27, 2018, it raised more than $287 million through sales of Memoranda of Indebtedness ("MOIs") to more than 3,400 investors to fund its lending business.

303759169v1 1020052

16.    **Retention of KO:**  1 Global and its CEO, Ruderman, retained KO as counsel with regard to various matters ranging from litigation, to Human Resources advice, to advice regarding the aforementioned MOIs. One of the sources of KO's alleged liability complained of in this matter is a legal opinion by KO attorney Atlas concerning whether the MOIs should be registered as securities. This advice came in the form of two letters issued by Mr. Atlas dated May 17, 2016 and August 25, 2016. Those letters concluded that the MOIs are not "securities" for purposes of the federal securities laws and therefore do not need to be registered. The SEC and other claimants now allege that this advice was erroneous and the MOIs did indeed need to be registered.  Another source of KO's alleged liability concerns Ledbetter's alleged active involvement in marketing and selling these unregistered instruments and his alleged false statements that the MOIs were not securities.

17.    **SEC Action:**  On August 23, 2018, the United States Securities and Exchange Commission filed suit in the United States District Court for the Southern District of Florida, against 1 Global, 1 West, Ruderman and others.  The action is styled, *Securities and Exchange Commission v. 1 Global Capital LLC and Carl Ruderman, Defendants, and 1 West Capital LLC, Bright Smile Financing LLC, BRR Block Inc., Digi South LLC, Ganador Enterprises LLC, Media Pay LLC, Pay Now Direct LLC and Ruderman Family Trust, Relief Defendants*, Case No. 0:18-CV-61991-BB ("SEC Action").  A copy of the Complaint in the SEC Action is attached as *Exhibit C* hereto.  The SEC Action alleges that 1 Global and Ruderman engaged in the sale of unregistered securities (the MOIs) and committed fraud in the conduct of 1 Global's business.

18.    The SEC Action does not include KO or its attorneys as defendants.  However, certain proceedings in that action have revealed evidence pertaining to the roles of KO and Ledbetter in their interactions with 1 Global and Ruderman.  In the course of the SEC Action, the

- 5 -

SEC sought (and ultimately obtained) a preliminary injunction imposing a blanket asset freeze against Ruderman.  Ruderman filed a Memorandum of Law in Opposition to the Motion for a Preliminary Injunction (the "Ruderman Memorandum") in which he raised an advice of counsel defense, alleging that he had hired KO "to assist 1 Global (and him) in all aspects of the company's business operations." The Ruderman memorandum asserted that "KO's involvement in 1 Global was pervasive and substantial, and included forming the company… [and] overseeing the company's efforts to raise capital from individual lenders."

19.     The Ruderman Memorandum also stated that an unnamed KO attorney "was responsible for overseeing 1 Global's entire network of sales agents and received a commission "override" on all capital raised by these agents." It also stated that the same (unidentified) attorney "was responsible for preparing and disseminating 1 Global's marketing materials to potential lenders… and for supervising and overseeing the marketing efforts by the sales agent network, including their representations and statements to potential lenders."  The unidentified attorney referenced in the Ruderman Memorandum is Ledbetter.

20.     **Foster Class Action:**  On September 12, 2018, a putative class action complaint was filed in the Miami-Dade County Circuit Court against Ruderman, Ledbetter and KO.  The action is styled, *Sarah Foster, individually and on behalf of all others similarly situated v. Carl Ruderman, Kopelowitz Ostrow P.S., and Dale Ledbetter*, Case No. 2018-030906-CA-01, pending in the Circuit Court in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("Foster Class Action").  A copy of the First Amended Class Action Complaint in the Foster Action is attached as ***Exhibit D*** hereto.  The Complaint asserts one count against KO and Ledbetter based on their alleged sale of unregistered securities (the MOIs) as "Statutory Sellers" pursuant to federal securities law (15 U.S.C. §§ 77(e)(a), 77(e)(c) & 77(a)(1)).  Specifically, the

303759169v1 1020052

Complaint asserts that "KO…prepared the MOI contracts between 1 Global and its individual lenders" and "when 1 Global sought advice as to whether the MOI's were securities that needed to be registered under the Securities Act, KO advised 1 Global that these were notes that did not need to be registered with the SEC." It also alleges one count against KO and Ledbetter for violation of the Florida Securities and Investor Protection Act (Fla. Stat. 517.07 & 517.211) on the basis that KO and Ledbetter allegedly were "responsible for preparing and disseminating 1 Global marketing materials to potential lenders, and for supervising and overseeing the marketing efforts by the sales agent network." For both counts, it alleges that KO is liable for the actions of Ledbetter under the doctrine of respondeat superior on the grounds that Ledbetter was acting within the scope and course of his employment as "Of Counsel" with KO.

21.     The Foster Class Action Complaint cites to the SEC Action in which Ruderman alleges that "1st Global's marketing operations to potential individual lenders – described by the SEC as investors – was spearheaded by an attorney at KO (the 'KO Attorney')…" Foster Class Action Complaint, ¶38. It claims that the "KO Attorney" is Dale Ledbetter. *Id.* The Complaint continues, reproducing excerpts from Ruderman's declaration in the SEC action, that Mr. Ledbetter "was responsible for overseeing 1 Global's entire network of sales agents, and received a commission 'override' on all capital raised by these agents." *Id.* Ledbetter was also allegedly "responsible for preparing and disseminating 1 Global marketing materials to potential lenders, and for supervising and overseeing the marketing efforts by the sales agent network, including their representation and statements to potential lenders." *Id.*

22.     The Complaint further claims that Ledbetter "was actively involved in attracting brokers to sell 1st Global's unregistered securities on behalf of 1st Global." Foster Class Action Complaint, ¶39. It further alleges that Mr. Ledbetter assured brokers that the MOIs to be sold by

303759169v1 1020052

1 Global were not securities that required registration with the SEC. *Id*. at ¶39. Supposedly, Mr. Ledbetter did not work for 1 Global but received finder's fees from 1 Global with percentages varying from .75% to 1 % of all agents that brought in money to 1 Global, and that Mr. Ledbetter received $100,000 to $200,000 in commissions monthly. *Id.*, ¶41.

23.     **Stoltmann Law Offices Class Action and Demand:**  On February 13, 2019, the Stoltmann Law Offices filed a purported class action in the Circuit Court of Cook County, Illinois, captioned *Russell and Kim Rasner, et al. v. Kopelowitz Ostrow, P.A. and Andrew Dale Ledbetter*, Case No. 2019L001635 ("Rasner Class Action").  A copy of the Complaint in the Rasner Action is attached as ***Exhibit E*** hereto.

24.     The Rasner Class Action purported to be a class action and was brought on behalf of 88 named individual plaintiffs domiciled in the State of Illinois who purchased MOIs from 1 Global.   According to the Complaint, each named plaintiff suffered damages of at least $100,000 because the MOIs they purchased were a "total loss," resulting in collective damages of over $19 million for all 88 plaintiffs.

25.     The Rasner Class Action Plaintiffs alleged that instead of using their money as specified in the MOIs, "1st Global used substantial amounts of lender money to pay operating expenses and to purchase already-distressed long term credit card debt."  Moreover, they alleged that "1st Global and its CEO misappropriated at least $35 million of investor money, including funneling money to other companies owned or controlled by Ruderman, companies owned by Ruderman's friends and relatives, or by Ruderman himself to pay for vacations, make payments on his Mercedes Benz, payments for his housekeeper and personal chef, payments to personal credit cards companies, payments to for his son's car insurance, and payments to his ex-wife."

26.     Finally, the Complaint in the Rasner Class Action alleged that Ledbetter "made representations" to plaintiffs' financial advisor and directly to plaintiffs "in order to induce the Plaintiffs to invest in 1st Global."  These representations concerned "the legality and structure of 1st Global."  This included "appearing in videos for use by . . . [plaintiffs' financial advisors] to sell investment in 1st Global, preparing marketing materials for 1st Global, and giving legal advice to the . . . [financial advisors] as to the legality of the 1st Global scheme."  It further alleged that Ledbetter received commissions on the sales of MOIs to plaintiffs, a fact which he improperly failed to disclose to plaintiffs.

27.     The Rasner Class Action was eventually dismissed without prejudice.

28.     **Demands Against KO, Ledbetter and Atlas:**  Numerous demands for payment of damages, both pre-litigation and post-litigation, have been made against KO, Ledbetter and Atlas, as detailed below.

29.     **Ruderman's Demands Against KO, Ledbetter and Atlas:**  In early 2019, Ruderman informed KO, Ledbetter and Atlas that he intended to assert substantial claims against them, including his intent to assert in the Foster Class Action cross-claims for professional negligence and indemnification based on KO's advice not to register the MOIs. Ruderman also threatened to bring a separate suit against KO seeking indemnification to the extent of his liability, if any, in the SEC action and for separate and additional damages based on the legal advice provided by KO.

30.     **Demands of 1 Global, Creditor's Committee and Foster Class Action Plaintiffs' to KO, Ledbetter and Atlas:**  The Creditor's Committee in the bankruptcy proceedings of 1 Global and 1 West, and the Foster Class Action Plaintiffs, also seek substantial sums of money from KO, Ledbetter and Atlas for malpractice and breaches of fiduciary duty.

303759169v1 1020052

The demand also asserts that KO, Ledbetter and Atlas were paid substantial sums of money in legal fees and/or commission in connection with their representation of 1 Global, and that those payments are recoverable on the basis of fraudulent transfers and/or disgorgement.

31.     **Supplemental Demand of 1 Global, Creditor's Committee and Foster Class Action Plaintiffs:**  These claimants subsequently stated their position that KO, Ledbetter and Atlas engaged in distinct and unrelated Wrongful Acts as that term is used in the AAIC Policies, purportedly giving rise to multiple, separate Claims, supposedly implicating the $4 million aggregate limit provision.

32.     Specifically, claimants asserted that there are two "separate" claims, consisting of: (1) alleged professional malpractice arising out of KO's opinion letters advising that the MOIs are not securities that need to be registered, and (2) the professional malpractice claim arising out of an alleged conflict of interest in KO representing both 1 Global and Bright Smile Financing, LLC ("Bright Smile") (and possibly certain trusts affiliated with Bright Smile), even though, according to the demand, 1 Global "was and has always been adverse to Bright Smile."  In particular, claimants alleged that Bright Smile was formed by KO but controlled by Ruderman, and that it was in the business of lending money to individuals for the purpose of financing cosmetic or dental procedures. Claimants alleged that KO simultaneously represented 1 Global, Mr. Ruderman and Bright Smile without any conflict waiver letters, and that no attorney of KO ever advised 1 Global of the potential conflicts, explained to 1 Global the potential ramifications of the dual representation, advised 1 Global to seek independent counsel regarding a waiver of conflict, or obtained the informed consent of 1 Global to such dual representation. According to claimants, 1 Global and Bright Smile have always been adverse because 1 Global transferred millions of dollars to Bright Smile. Claimants also alleged that KO formed a trust ("Bright Smile

303759169v1 1020052

Trust") to hold the membership interests in Bright Smile, naming Ruderman as Grantor, Atlas as Trustee, and Ruderman's wife and children as the Beneficiaries.

33.     The various claims and lawsuits described above in Paragraphs 17-32 are referred to collectively in this Complaint as the "Underlying Claims and Suits."

34.     The Foster Class Action Lawsuit was first reported to AAIC in writing during the period of the First AAIC Policy.  AAIC has agreed to defend and has been defending Defendants KO, Ledbetter and Atlas under a full and complete reservation of rights.

## THE AAIC POLICY

35.     The AAIC Policies contain the following insuring agreements:

**LAWYERS PROFESSIONAL LIABILITY INSURANCE**

This is a claims made and reported policy with CLAIMS EXPENSES included within the limits of liability. Please read the entire policy carefully. The coverage provided under this policy is limited to those claims first made against the INSURED and reported in writing to the Company during the POLICY PERIOD unless and to the extend an Extended Reporting Period applies. CLAIMS EXPENSES are payable within and not in addition to the policy limit of liability.

****

## SECTION I – INSURING AGREEMENTS

A. COVERAGE – PROFESSIONAL LIABILITY

1. The company shall pay on behalf of any INSURED all DAMAGES and related CLAIMS EXPENSES in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, but only to the extent this policy applies to such CLAIMS or DAMAGES…

2. Coverage shall apply only to any such CLAIMS arising out of the conduct of the INSURED'S PROFESSIONAL SERVICES.

- 11 -

****

## B. DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

1. With respect to such insurance afforded by this policy for DAMAGES and CLAIMS EXPENSES that are covered under this Policy, the Company shall:

a. have the right and duty to defend, including selection of counsel and arbitrators, in any INSURED'S name and on any INSURED'S behalf any CLAIM for DAMAGES to which this policy applies, against any INSURED, even if such CLAIM is groundless, false or fraudulent and shall have the right to make such investigation, negotiation and settlement, subject to any CLAIM as it deems expedient;

b. not settle any CLAIM without the written consent of the NAMED INSURED which consent shall not be unreasonably withheld. If however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including related CLAIMS EXPENSES up to the date of such refusal, or the applicable limits of liability, whichever is less;

c. reimburse up to $750.00 to each INSURED for each day or part thereof for his or her attendance at the Company's request at trial or court-imposed hearing or arbitration proceeding involving a CLAIM, but the total amount so payable shall not exceed $50,000 per POLICY PERIOD. Any payments made by the Company under this provision will be in addition to the applicable limits of liability and shall not be subject to the deductible.

d. The Company shall not be obligated to provide coverage for DAMAGES or CLAIMS EXPENSES once the limit of the Company's liability as stated in the Declarations has been exhausted by payment of DAMAGES and/or CLAIMS EXPENSES.

****

36.     The AAIC Policies contain the following provisions concerning limits of

liability and deductible:

## SECTION II – LIMITS OF LIABILITY AND DEDUCTIBLE

****

- 12 -

D. CLAIMS EXPENSES

CLAIMS EXPENSES are within the limits of liability and not in addition hereto. Such CLAIMS EXPENSES shall reduce the available limit of liability.

E. MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

1. The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not operate to increase the limits of liability or deductible.

2. Two or more CLAIMS arising out of a single WRONGFUL ACT or a series of related WRONGFUL ACTS shall be treated as a single CLAIM. Such CLAIMS are RELATED CLAIMS. All such CLAIMS resulting from interrelated WRONGFUL ACTS, whenever made shall be considered first made on the date on which the earliest CLAIM arising out of such WRONGFUL ACT was first made regardless of the number of CLAIMS subsequently made and all such CLAIMS are subject to the same limits of liability and deductible.

****

## SECTION III. DEFINITIONS

B. CLAIM means a demand made upon any INSURED for DAMAGES, including but not limited to service of suit or institution of any alternative dispute resolution proceedings against any INSURED.

C. CLAIMS EXPENSES means all costs allocated to a specific CLAIM the Company investigates, settles or defends including:

1. fees charged by any lawyer retained by the Company to defend the INSURED;

2. If authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

   a. All costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

   b. Premiums on appeal bonds and premiums on bonds to release attachments in such suits. The Company shall have no obligation to provide such bonds.

303759169v1 1020052

CLAIMS EXPENSES shall not include salaries and expenses of regular employees or officers of the Company.

\*\*\*\*

I. INSURED means:

1. the NAMED INSURED;

2. any past or present partner, officer, director, lawyer (including a government affairs advisor or lobbyist), member of a professional association, professional corporation, limited liability corporation, limited liability partnership, professional limited liability corporation, stockholder, employee, legal assistant, law firm administrator, paralegal, independent contractor or of counsel of the NAMED INSURED, but only as respects PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED subject to the RETROACTIVE DATE;

\*\*\*\*

R. PROFESSIONAL SERVICES means any services arising out of the conduct of the INSURED'S profession as a Lawyer, Lobbyist, Government Affairs Advisor, or as a Lawyer acting the capacity of an Arbitrator, Mediator, Neutral Fact Finder, Title Insurance Agent, or Notary Public, or as a member, director, or officer of any Bar Association, its Governing board or any of its committees. The definition PROFESSIONAL SERVICES shall include services any INSURED performs as an author or publisher of legal research papers, legal materials or while preparing materials and presenting legal seminars but only where such services are performed without compensation or compensation per publication, presentation or seminar is less than $30,000.

\*\*\*\*

U. RELATED CLAIMS mean all CLAIMS arising out of a single WRONGFUL ACT or arising out of related WRONGFUL ACTS in the rendering of PROFESSIONAL SERVICES or NON-PROFIT OUTSIDE ENTITY services.

\*\*\*\*

X. WRONGFUL ACT(S) means any actual or alleged:

1. act;
2. error;
3. omission;
4. misstatement;

- 14 -

303759169v1 1020052

5. misleading statements;
6. neglect or breach of duty or network privacy;
7. personal injury; or
8. advertising injury.

## SECTION IV. EXCLUSIONS

This policy does not apply to:

A. Criminal, Fraudulent, Malicious, Dishonest or Intentional Acts. Any CLAIM that results in any final judgment or final adjudication against any INSURED based upon or arising out of any criminal, intentional, dishonest, fraudulent or malicious WRONGFUL ACT including any willful violation of any statute or regulation. This exclusion does not apply to any INSURED who is not so adjudged.

B. Prior Knowledge. Any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if:

1. the matter had previously been reported to any insurance company; or

2. if the INSURED at or before the effective date of this policy knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM. However, this paragraph B.2 does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM.

3. In no event will a CLAIM be covered under this policy if it is attributable to or arises out of a WRONGFUL ACT that occurred prior to this policy's RETROACTIVE DATE.

****

F. INSURED'S Activities. Any CLAIM arising out of any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization or association other than the NAMED INSURED or PRIOR LAW FIRM except as a member, director or officer of any Bar Association, its governing board or any of its committees.

****

M. Business Enterprise. Any CLAIM arising out of PROFESSIONAL SERVICES or legal advice rendered by any INSURED in connection with any business enterprise not shown on the Declarations:

303759169v1 1020052

1. that is was or will be owned in whole or in part by any INSURED or any member of any INSURED'S IMMEDIATE FAMILY;

2. that is, was or will be in any way controlled, operated or managed by any INSURED or any member of any INSURED'S IMMEDIATE FAMILY including the ownership, maintenance or use of any property in connection therewith; or

3. in which any INSURED or any member of any INSURED'S IMMEDIATE FAMILY is, was or will be a partner or employee.

***

**PRIOR AND PENDING LITIGATION ENDORSEMENT**

This endorsement modifies Insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the Company has no duty to defend or indemnify an INSURED for, and this policy does not apply to any CLAIM based upon or arising out of any:

a. inquiry or proceeding by a regulatory or licensing board, peer review committee, disciplinary official or state/ federal agency; or,

b. a demand, suit or proceeding pending, or order, decree, settlement or judgment entered against the NAMED INSURED as of 12/01/2014.

Including any CLAIM alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or demand.

***

**RETROACTIVE DATE ENDORSEMENT**

This endorsement modifies Insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium paid, it is agreed that the policy is amended as follows:

This policy does not apply to any CLAIMS or CLAIMS arising from, attributable to, or based upon any WRONGFUL ACT(S) committed or

- 16 -

alleged to have been committed by the following INSUREDS prior to the retroactive date listed in the following schedule.

\*\*\*

## SECTION VI - CONDITIONS

B. INSURED'S DUTIES SUBSEQUENT TO CLAIM

1. All INSUREDS shall cooperate with the Company in the defense, investigation and settlement of any CLAIM.

Upon the Company's request, the INSURED, shall submit to examination, attend hearings, depositions and trials and assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits, mediations or similar proceedings.

2. All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED of the Company.

C. REPORTING OF POTENTIAL CLAIMS

\*\*\*

1. If, during the POLICY PERIOD, any INSURED first becomes aware of any WRONGFUL ACT which might reasonably give rise to a CLAIM against any INSURED under this policy and gives written notice of such WRONGFUL ACT to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising out of that WRONGFUL ACT shall be considered to have been made during such POLICY PERIOD.

\*\*\*

## COUNT I
## DECLARATION RE "PROFESSIONAL SERVICES"

37.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-36 as if fully stated herein.

38.     It is the position of AAIC that the AAIC Policies do not provide coverage for the Underlying Claims and Suits to the extent that the wrongful acts alleged therein do not fall within the AAIC Policies' definition of "PROFESSIONAL SERVICES."   As an example, an

- 17 -

insured's participation in the sales and marketing of securities, which has been alleged with respect to Ledbetter, does not constitute "Professional Services."  See AAIC Policies, Section I – Insuring Agreements, Coverage A.2 ("Coverage shall apply only to any such CLAIMS arising out of the conduct of the INSURED'S PROFESSIONAL SERVICES."  Also See Definition R ("PROFESSIONAL SERVICES").

39.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

## COUNT II
## DECLARATION RE EXCLUSION "F" – ACTIVITIES
## AS OFFICER OR EMPLOYEE OF A NON-INSURED ENTITY

40.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-39 as if fully stated herein.

41.     It is the position of AAIC that the AAIC Policies do not provide coverage for the Underlying Claims and Suits to the extent that the wrongful acts alleged therein constitute "activities as an officer, director, partner, manager or employee of any company . . . other than the NAMED INSURED or PRIOR LAW FIRM. . . ."  See AAIC Policies, Exclusion F.  As an example, an insured's participation in the sales and marketing of securities, which has been alleged with respect to Ledbetter, and the provision of other services for which KO did not bill any client, as was also alleged, are activities that fall within the scope of Exclusion F.

42.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

303759169v1 1020052

**COUNT III**
**DECLARATION RE EXCLUSION "M" – RENDERING**
**PROFESSIONAL SERVICES AS EMPLOYEE OF NON-INSURED ENTITY**

43.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-42 as if fully stated herein.

44.     It is the position of AAIC that the AAIC Policies do not provide coverage for the Underlying Claims and Suits to the extent that the wrongful acts alleged therein constitute rendering PROFESSIONAL SERVICES or legal advice in connection with 1 Global, 1 West or any other business enterprise not shown on the AAIC Policies' Declarations, that was owned in whole or in part by any INSURED or any member of any INSURED'S IMMEDIATE FAMILY or that was any way controlled, operated or managed by any INSURED or any member of any INSURED'S IMMEDIATE FAMILY or in which any INSURED or any member of any INSURED'S IMMEDIATE FAMILY was a partner or employee.  See AAIC Policies, Exclusion IV.M.  Certain allegations against Ledbetter, including allegations that he accepted commissions on the sale of MOIs, indicate that he may have been acting in the capacity as an employee or partner of 1 Global.

45.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

**COUNT IV**
**DECLARATION RE WRONGFUL ACTS**
**OCCURRING BEFORE RETROACTIVE DATE**

46.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-45 as if fully stated herein.

- 19 -

303759169v1 1020052

47.     It is the position of AAIC that there is no coverage under the AAIC Policies to the extent that the CLAIM for which coverage is sought involves WRONGFUL ACTS occurring, committed or alleged to have been committed before the RETROACTIVE DATE.  For example, there is no coverage for any WRONGFUL ACTS committed or alleged to have been committed by Ledbetter before October 27, 2014.  See AAIC Policies, Retroactive Date Endorsement and Schedule, and Insuring Agreement I.A.1.

48.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

**COUNT V**
**DECLARATION RE EXCLUSION "B" - WRONGFUL ACTS**
**PREVIOUSLY REPORTED OR REASONABLY FORESEEN**

49.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-48 as if fully stated herein.

50.     It is the position of AAIC that there is no coverage under the First AAIC Policy for any CLAIM arising out any WRONGFUL ACT occurring prior to the effective date of that policy, or under the Second AAIC Policy for any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of that policy, to the extent that the matter had previously been reported to any insurance company or if the INSURED at or before the effective date of the AAIC Policy knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.  See AAIC Policies, Section IV. Exclusions, B.1 and B.2. In this instance, KO, Ledbetter and Atlas knew or could have reasonably foreseen before December 1, 2017, that the WRONGFUL ACTS alleged in the Underlying Claims and Suits might be expected to be the basis of a CLAIM, given their involvement with Ruderman and 1

- 20 -

Global dating back at least as far as February 2014.  Moreover, prior to December 1, 2018, the matters that are the subject of the Underlying Claims and Suits had already been reported to AAIC.

51.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

**COUNT VI**
**DECLARATION CLAIMS ARISING OUT OF**
**PRIOR AND PENDING LITIGATION AND DEMANDS**

52.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-51 as if fully stated herein.

53.     It is the position of AAIC that the AAIC Policies do not provide coverage for the Underlying Claims and Suits to the extent that any of those claims and suits allege or derive from the same or essentially the same facts as alleged in pending or prior litigation or demands. Certain Underlying Claims and Suits that were tendered in February of 2019, during the period of the Second AAIC Policy, allege or derive from the same or essentially the same facts as alleged in pending or prior litigation or demands such as the Foster Class Action.  See AAIC Policies, Prior and Pending Litigation Endorsement.

54.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

303759169v1 1020052

**COUNT VII**
**DECLARATION RE CLAIMS MADE AFTER**
**EXPIRATION OF FIRST AAIC POLICY THAT**
**ARISE OUT OF WRONGFUL ACTS PREVIOUSLY REPORTED**

55.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-54 as if fully stated herein.

56.     It is the position of AAIC that, because during the period of the First AAIC Policy, KO, Ledbetter and/or Atlas gave written notice of the WRONGFUL ACTS that are the subject of the Underlying Claims and Actions, any CLAIMS subsequently made against KO, Ledbetter and/or Atlas arising out of that WRONGFUL ACT shall be considered to have been made during the period of the First AAIC Policy and not during the period of the Second AAIC Policy.  See AAIC Policies, Section VI, Conditions, Par. C.1.

57.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

**COUNT VIII**
**DECLARATION RE CLAIMS FOR REFUND**
**OR RESTITUTION OF LEGAL FEES PAID TO INSURED**

58.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-57 as if fully stated herein.

59.     It is the position of AAIC that the AAIC Policies do not cover claims for the refund or restitution of legal fees paid to KO, pursuant to the definition of "DAMAGES" in Section III.E of the AAIC Policies, which excludes legal fees, commissions and compensation charged by the INSURED.

303759169v1 1020052

60.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

### COUNT IX
### DECLARATION RE CLAIMS ALLEGING
### CRIMINAL, FRAUDULENT, MALICIOUS, OR DISHONEST ACTS
### INCLUDING WILLFUL VIOLATION OF STATUTE

61.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-60 as if fully stated herein.

62.     It is the position of AAIC that, to the extent that any claim alleging criminal, fraudulent, malicious, dishonest or intentional acts, including any willful violation of any statute or regulation, results in a final judgment or final adjudication against any INSURED based upon such conduct, there is no coverage under the AAIC Policies.  See AAIC Policies, Exclusion IV.A.

63.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

### COUNT X
### DECLARATION RE RELATED
### WRONGFUL ACTS AND RELATED CLAIMS

64.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-63 as if fully stated herein.

65.     It is the position of AAIC that the allegations in the Underlying Claims and Actions represent a series of related WRONGFUL ACTS, and therefore shall all be treated as a single CLAIM or RELATED CLAIMS, and therefore shall be considered first made on the date

303759169v1 1020052

on which the earliest such CLAIM was first made, pursuant to Section II, Limits of Liability and Deductible, Par. E.2, and Section III, Definition U ("RELATED CLAIMS"), of the AAIC Policies.

66.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

## COUNT XI
## DECLARATION RE DUTY OF COOPERATION

67.     Plaintiff AAIC hereby incorporates by reference and restates paragraphs 1-66 as if fully stated herein.

68.     After AAIC received notice of certain underlying claims, counsel for AAIC requested Atlas, Ledbetter and KO to present themselves for examinations under oath pursuant to Condition VI.B.1 and VI.B.2 of the AAIC Policies.  Defendant Atlas refused to appear for an examination under oath, without justification, cause or excuse.  Defendant Ledbetter appeared and answered some questions, however, he walked out before the examination was completed, without justification, cause or excuse.  The corporate representative for KO also appeared, however, he refused to be sworn.  Each of these instances was a material failure to cooperate which substantially prejudiced AAIC.  Accordingly, it is the position of AAIC that the assistance and cooperation conditions set forth in Condition VI.B.1 and VI.B.2 of the AAIC Policies were violated, precluding coverage under those policies of insurance.

69.     On information and belief, an actual, present, and justiciable controversy exists between AAIC and one or more of the Defendants regarding this issue that warrants the entry of declaratory judgment by this Court.

WHEREFORE, Plaintiff AMERICAN ALTERNATIVE INSURANCE CORPORATION respectfully requests this Honorable Court to enter judgment in its favor, declaring that:

A.    No coverage exists under one or both of the AAIC Policies for the Underlying Claims and Actions asserted against KO, Ledbetter and Atlas.

B.    AAIC has no duty to defend or indemnify KO, Ledbetter and Atlas under one or both of the AAIC Policies with respect to the Underlying Claims and Actions.

C.    Any and all such other relief this Honorable Court deems just and proper under the circumstances.

Respectfully submitted,


s/Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com
rejeserve@hinshawlaw.com

Viviana Arango Loshak
Fla. Bar No. 84869
Email: vloshak@fowler-white.com
dsmellie@hinshawlaw.com

HINSHAW & CULBERTSON LLP
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, FL  33301
Telephone: (954) 467-7900
Facsimile: (954) 467-1024

***Attorneys for Plaintiff***

303759169v1 1020052